## MILTON et al. v. H. C. STONE LUMBER CO.

Circuit Court of Appeals, Seventh Circuit. December 5, 1929.

Rehearing Denied January 18, 1930.

No. 4169.

Josiah Whitnel, of East St. Louis, Ill., and David J. Cowan, of Peoria, Ill., for appellants.

Chester F. Barnett, of Peoria, Ill., for appellee.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

EVAN A. EVANS, Circuit Judge. Appellants complain because the court failed to apply the proper measure of damages to determine its loss suffered by reason of appellee's breach of its contract. The action was tried by the court upon a written stipulation waiving the jury. A carefully prepared opinion was filed by the District Court which embodied its views both as to fact and the law. The substance of these views was: That appellee breached its contract to take 100,000 feet of hardwood lumber for which it had

agreed to pay a stipulated price; that at the date of the breach, and also at the date fixed in the contract for the delivery of the lumber, there was a well-recognized market price for lumber at the place of delivery of said lumber; that the market value of such lumber exceeded the contract price; that judgment should run to appellants but for nominal damages and costs.

Appellants argue that the proper measure of damage in this case is the difference between the contract price and the cost of cutting and marketing the lumber. Appellee, while insisting that it was justified in refusing to take any more lumber and therefore that it did not breach its contract, contends in the alternative for the rule of damages which the court applied.

A jury having been waived by the parties, appellants are not in a position to present questions of fact over which there is any dispute or conflict. Fleischmann Construction Co. v. United States, 270 U. S. 349, 46 S. Ct. 284, 70 L. Ed. 624; Law v. U. S., 266 U. S. 494, 45 S. Ct. 175, 69 L. Ed. 401. They must accept the general finding of the court in appellee's favor, as conclusive on the existence of a market value and also that the market value exceeded the contract price. The evidence on both these issues was conflicting.

Appellants contend, however, that the application of the proper rule of damages in case of a breach of contract presents a question of law reviewable on appeal. With the soundness of this position generally we are prepared to agree. Maryland Casualty Co. v. Jones, 279 U. S. 792, 49 S. Ct. 484, 73 L. Ed. 960. However, there are instances where the application of the true rule of damages depends upon circumstances and facts which throw light upon the understanding of the parties and the character of the agreement. If such facts and circumstances be controlling and are in dispute, then a finding on this issue by the court is likewise conclusive.

To illustrate, appellants contend that the evidence disclosed a situation which called for the application of what may be called an exception to the general rule of damages. To support their position, they contend that the agreement was one calling for the *manufacture* of merchandise rather than, as contended by appellee, a contract for the purchase and sale of hardwood lumber. If the determination of this issue is dependent upon the construction of evidence or upon disputed evidence, appellants are precluded from raising the only question upon which they rely for a reversal.

The contract was somewhat informally drawn and is to be found in letters and telegrams that passed between the parties.

Appellee's agent, after some verbal negotiations, wired appellant:

"Accept deal as agreed; write me outlining your understanding."

To this communication, plaintiffs replied:

"The purpose of this letter is in accord with our conversation and contract between J. W. Beck and Milton & Bass for lumber contracted by Milton & Bass to J. W. Beck.

"We understand the following:

"Milton & Bass are to furnish J. W. Beck with 100,000 (One Hundred Thousand) feet of Oak lumber at the following prices: * * *

"Milton & Bass agree to deliver said lumber F. O. B. cars E. S., Missouri.

"This lumber is to be graded at our mill in Washington County, and when there is as much as 20,000 feet or more sawed, J. W. Beck agrees to grade same at our mill in Washington County and to advance fifty per cent of purchase price on same.

"Milton & Bass agree to deliver said lumber to Elair Switch as soon after grading is completed at the mill as J. W. Beck wants it moved and we agree to move same to switch as rapidly as it is possible to move it after J. W. Beck is ready to have same moved.

"Milton & Bass retain the right to move lumber to Elair Switch on or before December 1st, 1920, providing lumber has been sawed at least ninety days before moving."

J. W. Beck wired:

"Your contract is O. K. both as to understanding and wording."

Thereafter the parties both by letters and actions construed, or attempted to construe or make more certain, the agreement. Differences arose over the percentages of different grades of lumber which appellee was required to accept and these differences finally lead to its refusal to accept any more lumber. About 25,000 feet of lumber was inspected and graded, but appellee refused to accept it because of the large percentage of No. 2 common. Most of this lumber was thereupon sold by appellants, who suffered a small loss thereon.

The evidence, written and oral, certainly supports, and we may add necessitates, a finding that the agreement was not one to manufacture an article but was rather a contract for the purchase and sale of lumber. The letters and bills sent by appellants support this conclusion. It is true the agreement called for appellee's inspection of the lumber when ready for delivery. This provision was

inserted, however, because of the difference in the price of the different grades of lumber and without a grading the purchase price was unascertainable.

In determining whether the contract was one to manufacture or one to sell lumber, it is significant that appellants did not agree to deliver all their lumber to appellee. Appellant Milton testified:

"We cut about 40,000 or 50,000 feet of lumber and had 80,000 or 90,000 feet of lumber in the woods. That is, we had cut down the trees."

One of the appellants was engaged in a like enterprise on an adjoining piece of land and was selling his lumber to another purchaser. Neither the agreement nor the oral testimony specified the length of the lumber or indicated that it was for a special use or purpose. In fact, such evidence as appears in the record negatives the idea that it was made for a special purpose.

In one of appellants' letters, the following appears: "He (one of appellants) said that you (appellee) were going to try to get us a market for our 2" stuff for bridge planks and anything you do for us along that line will be appreciated. He tells me he graded 100,000 feet of his other lumber at the switch and I understand him to say it averaged $78.00 and he only had about 2,000 feet culled out and I think our lumber that he is sawing now since you were there is much better than what you worked on. He says, in fact, they are getting out some nice stuff now."

The bill of exceptions does not contain all of one exhibit but enough appears to indicate what kind of lumber was covered by the contract.

"This report correctly shows the lumber inspected by me. The abbreviation 4/4" is a lumber trade abbreviation indicating the thickness of the lumber. It means one inch thick. 'F. A. S.' indicates first and seconds, No. 1 Com. indicates No. 1 Common, No. 2 Com. indicates No. 2 Common.

"Defendants Exhibit 7 was thereupon read in evidence. Said Exhibit was dated June 5, 1920, and recited an inspection of lumber of Milton and Bass stacked at their mill, eleven miles east of Elair, Missouri; that check should be sent payable to Milton & Bass; 'hold back 50% per M. to insure hauling and loading,' and reported the inspection piece by piece of 268 feet of first and seconds, 4715 feet of No. 1 Common, and 4493 feet of No. 2 Common; gave the percentages, lengths and widths of the various pieces of lumber and recited."

It was appellants' duty to bring up all of the evidence presented to the district court. The omission from this Exhibit 7 of the detailed description of the lumber inspected would be construed against them but for the fact that we think the other evidence shows that the lumber graded generally 4/4" and that there was some lumber which was not acceptable which the parties believed could be used for the planking of bridges.

It may be difficult to lay down a hard and fast rule by which courts may determine whether a contract is one to manufacture a special article or to sell an article of merchandise. The facts in each case must be considered, unless the parties, by written contract, make their purpose clear. In this record, we are satisfied that the evidence disclosed a contract to sell lumber. Such being our conclusion, it follows that the court applied the proper rule of damages.

Moreover, it should be observed as a further ground of affirmance that the evidence fails to establish what it cost appellants to produce the lumber. We cannot accept their contention that the sawlogs, from which the lumber was sawed, had no value or were not a proper item to be included in determining the costs.

The judgment is affirmed.